HAMLIN, Justice
(dissenting from the refusal to grant a rehearing.)
It is my view that, because of the irreconcilable views of the courts which have dealt with this case, reason dictates and justice demands that it should be ordered disposed of by the Police Jury of the Parish of Pointe Coupee before the invoking of Court proceedings.[1]
I agree with the following statement contained in the written opinion of the trial judge:
“Also, beginning more than twenty years ago, the Parish of Pointe Coupee through its police jury commenced and since has carried out an extensive and comprehensive parish-wide land drainage program. This program which was started with the assistance and collaboration of the Department of Public Works of the State of Louisiana has been continued without interruption. The program is financed by tax money derived from the tax payers of Pointe Coupee Parish, supplemented by state funds, and also with the assistance of the Federal Government particularly through engineering advice, assistance and supervision furnished by the Soil Conservation Service of the USDA. Much of the land in Pointe Coupee Parish has been drained through this program.
“Under this parish-wide program where-ever property owners have shown a need for drainage, such drainage has been forthcoming. In this particular area of the parish, artificial canals have been dug running in an easterly and westerly direction *18 draining toward the front into Bayou Maringouin and toward the rear into the Atchafalaya Bason Spillway Canal.
“The court is convinced from all of the facts in the record, including particularly the drainage systems of other plantations in the subj ect area and the testimony of the expert witnesses, including Mr. Martin, the agricultural engineer of the Soil Conservation Service, Mr. D. Jones, who preceded Mr. Martin in that capacity, Mr. Sam Dupree, the civil engineer, and Mr. C. O. Watts a practical farmer who has had much experience in agricultural drainage, that the proper and most effective drainage for plaintiff’s Eldorado Plantation is from east to west through artificial canals, similar to what has been done on other properties in fhe area.
“The President of the Point Coupee Parish Police Jury testified that he had informed the plaintiff, Mr. Nicholson, that if the plaintiff requested, the police jury, without cost to the plaintiff and as a part of the parish-wide drainage program, would dig a drainage canal running in an easterly and westerly direction from a point of beginning near the eastern side of plaintiff’s plantation to the Atchafalaya Spillway Canal on the West, in conformity with the drainage pattern in the area. The plaintiff was further informed that the canal would be adequate in size to drain the area for which the plaintiff seeks drainage in this lawsuit. Mr. Nicholson, the plaintiff, declined to accept'this offer of assistance.
“The record is equally clear that to require the opening of these old crevasse channels on defendant’s property and to direct the drainage water from plaintiff’s plantation through these old channels, would cause severe and irreparable damage to defendant and its plantation. Defendant’s witnesses so testified, without contradiction by plaintiff’s witnesses! I must agree with defendant’s' brief, in describing the effect such action would have bn defendant’s plantation, where it is stated:
“ ‘Its symmetric fields would be mutilated by the meanders of the old crevasse channels which it would be required to open and dig out. Its land forming and grading would be completely disrupted. Its drainage would be converted from a modern artificial system to an inconceivable and impossible state of confusion. In addition to its artificial ditches and canals, the affected portion of the Kenmore Plantation would be crossed by these crevasse channels running in a meaningless manner in varying directions, all subject to the control of the owner of the neighboring plantation.’
“The solution to plaintiff’s drainage requirements lies in the drainage program offered by the police jury of Pointe Coupee Parish. Under RS 33:1236(13) the police juries of the state have been vested full *20 power and authority to satisfy the drainage needs of their respective parishes. Specifically, the statute says:
“ 'The police juries shall have the following powers:
(13) To construct and maintain drainage, drainage ditches, and drainage canals; to open any and all drains which they may deem necessary and to do and perform all work in connection therewith; to cut and open new drains, ditches and canals, to acquire lands for all necessary public purposes, including rights of way, canals and ditches by expropriation, purchase, prescription or by donation; to enter into contracts for the construction of such drainage works and to purchase machinery and have the work performed under their own supervision; to allocate, use and expend the general alimony of the parish for any of the above purposes; to incur debt and issue bonds for drainage and drainage canals in the manner provided for by Subtitle II of Title 39; and use such other funds as may be legally expended for such purposes; to levy taxes for the maintenance of said drainage works in the manner provided for and under the authority of Article X, Section 10 of the Constitution of the State of Louisiana, as amended, and to construct any works and do any and all things necessary to effect proper drainage and carry this Paragraph into effect; to enter into contracts or agreements, under such terms and conditions as may be mutually agreeable with the State of Louisiana, through the Department of Public Works for the securing of State aid for the purposes herein authorized; to cooperate and participate in any State or Federal aid program which may now exist or which may hereafter come into effect under any State or Federal Law. Police juries shall open all natural drains which they may deem necessary in their respective parishes and shall perform all work connected therewith, which they may deem necessary to make the opening of natural drains effective. They may perform all other acts necessary to fully drain all the land in their respective parishes and maintain such drainage when established. This Paragraph is intended to furnish additional means whereby parishes in the State of Louisiana may accomplish the objects and purposes herein referred to, and shall be liberally interpreted.’
“The property owners of Pointe Coupee Parish are fortunate that their police jury is carrying out the objects and purposes of this statute.”
There is no doubt in my mind that - the Legislature intended to implement Antique Article 660 of the Civil Code by giving police juries the powers enumerated in R.S. 33:1236(13),- supra. This case is a classic example of the need for such legislation in these days and times.
I respectfully dissent from the refusal to grant a rehearing herein.

: Compare Aurora Properties, Inc. v. Louisiana Power & Light Company, 251 La. 879, 207 So.2d 356 (1968).